ALTENBERND, Judge,
Concurring.
On April 20, 2005, Edgar Monzon was driving to work around 6 a.m. in his truck. He is a carpenter and was employed by Carpenter Constructors of America as a foreman. The truck he was driving was a company truck.
For some reason, Mr. Monzon was momentarily inattentive to traffic conditions. When a pickup truck in front of his truck slowed and put on its turn signal, Mr. Monzon ran into the back of that truck. A young man was riding without any safety restraint in the bed of the pickup truck. He was thrown from the vehicle and died as a result of this accident.
Under normal circumstances, Mr. Mon-zon would have received a traffic ticket and this matter would have been turned over to the insurance carrier for Carpenter Constructors of America. The matter either would have been settled or would have resulted in a civil suit.
But Mr. Monzon did not have a driver’s license. As a result, he was charged with driving without a license resulting in death. See § 322.34(6)(a), Fla. Stat. (2005). The legislature has designated this offense to be a third-degree felony. Id. Third-degree felonies are generally subject to no more than five years’ imprisonment, see § 775.082(3)(d), Fla. Stat. (2005). The offense itself calls for only twenty-eight points on a sentencing score-sheet. See § 921.0022(3), Fla. Stat. (2005) (classifying driving without a license resulting in death as a “level 5” offense). Mr. Monzon had no prior offenses and thus no other points for offenses on his scoresheet.
Pursuant to section 921.0024(l)(a), Mr. Monzon’s scoresheet also included 120 victim injury points based upon the death that resulted from the accident. This resulted in a sentencing scoresheet that required a lowest permissible prison sentence of ninety months or 7½ years. See § 921.0024(2) (providing in part, “If the lowest permissible sentence under the code exceeds the statutory maximum sentence ... the sentence required by the code must be imposed”). The trial court imposed the ninety-month sentence, but made it clear that it was doing so only because the legislature mandated this sentence.
Mr. Monzon unquestionably was driving without a license, and his negligent driving contributed to the young man’s death. As a result, the jury convicted him of this offense and we have no basis to override that lawful verdict or the sentence required under the applicable statutes.
If Mr. Monzon had lost his license because he was a drunk or a bad driver, I would have no sympathy for him in this case. If he had never bothered to take the test to get the license that Florida offered to him for a nominal price, I would not write this special concurrence.
But Mr. Monzon is an undocumented alien. He came here fifteen years ago from Guatemala. This middle-aged man lived with his wife, who is a United States citizen, and supported her two children as well as his son and family back in Guatemala. He has never been in trouble with the law. Numerous people came to his sentencing hearing to testify without contradiction that he is a responsible and contributing member of his community, albeit not a citizen.
Because he does not have resident alien status, Mr. Monzon cannot lawfully obtain a Florida driver’s license.[1] See § 322.08(2)(c). If he had attempted to ap *814 ply for a Florida driver’s license in this era of heightened terrorist security, he may have risked deportation. Ironically, because he had no license and risked deportation, he had reason to drive more carefully than other drivers.
Mr. Monzon was employed by a large corporation. His employer provided the vehicle apparently without determining Mr. Monzon’s immigration status or that he had no Florida driver’s license. He went to jail; the corporation went looking for a new foreman.
I do not intend to debate the wisdom of federal immigration policy. Whether the United States government should deport a man like Mr. Monzon is not the issue. Rather, the issue here is the public policies of the state of Florida and whether the Florida Statutes further those policies. Taxpayers will spend in excess of $150,000 to imprison a good carpenter and a good husband. Meanwhile, we will probably need to provide financial support to his wife and family in this state, while his family in Guatemala will also suffer. The Florida Legislature, I suspect inadvertently, has thus decided to spend substantial Florida resources to imprison Mr. Monzon for an act that is simple negligence, aggravated only by his decision years ago to enter this country in violation of federal law.
I do not question that the family of the victim in this case mourns the loss of a good, young man. The same is true for all family members of people who die in automobile accidents. But Florida has never made negligent operation of a motor vehicle resulting in death a crime. To make it a crime merely because the driver is in this country in violation of federal immigration laws establishes a law that seems to me to be unsupported by any Florida public policy that could justify this use of state resources. The legislature ought to consider an amendment that fine-tunes these statutes.

. He apparently obtained a driver's license at an earlier time in North Carolina, but it has expired. He did not risk attempting to obtain a license in this state when he arrived here.